We're happy to hear your argument in number 20, 4199. Mr. Bryant. Thank you. Good afternoon, your honors. May it please the court. Patrick Bryant on behalf of Kelly Miltier. This court should vacate Mr. Miltier's sentence because the district court should have applied a two point reduction to his offense level under the sentencing guidelines. There are three reasons that it should have done so. First, the actions on the part of law enforcement taking material out of Mr. Miltier's computer should not be included in his relevant conduct. Second, the structure, purpose, and history of the guidelines, as well as analogous cases from this court, suggest that any distribution that would disqualify the defendant from the enhancement has to be knowing. And then third, the government's argument does violence to the structure and purpose of the guideline by rendering part of it superfluous in that it would never apply in a case involving a peer to peer network. So first, turning to my relevant conduct point. Unintentional actions on the part of Mr. Miltier should not be included in his relevant conduct. What we really have here is conduct by law enforcement to take material out of his computer. This court has squarely held, the language is black and white, that relevant conduct under the guidelines must be criminal conduct and the government's action taking material out of his computer is not a criminal activity on the part of Mr. Miltier. And if you look at guideline 1B1.3, the relevant conduct guideline, the language that it uses are words like committed, aided and abetted, counseled, commanded, procured, willfully caused, all of those words, even if you include omissions, all of those words imply some sort of intentionality and conscious choice on the part of the defendant that we don't have here. It's really no different than if hackers outside, if he didn't have any peer to peer software at all, and hackers had broken into his computer and taken material out, that's not distribution on his part. So it shouldn't be included in his relevant conduct at all. Mr. Bryant, can I ask a question? So did I understand you to be arguing that the reduction should apply because to the extent that there was any distribution, or you're arguing that it was unknowing, but then you seem to suggest that because the distribution, if any, that occurred in this case was at the hands of federal agents, that that's yet another reason why this reduction should apply. But I didn't take your brief to have made that second argument. Well, our brief argues that it has to be relevant conduct. And so we've made arguments premised on the Dove case from this court and the Dura case from the Third Circuit that it has to be criminal conduct on the defendant's part in order to be relevant conduct to be considered for purposes of the guidelines at all. So we believe that is in the brief. I'm perhaps offering a different analogy for the first time today, but we certainly have made the argument in the brief that the relevant conduct has to be criminal conduct on Mr. Miltier's part in order for actions to be considered in the guidelines at all, or certainly in disqualifying him from this reduction. Because the only way he would be disqualified from the reduction is if his conduct is not limited to receipt or solicitation. That is premised that there has to be some conduct on his part, and the way that we determine that is to look at relevant conduct. So I think that is in line with the argument that we've made in the brief. If I've perhaps clarified it this morning, I'd be happy to answer any further questions you have. But I think it is consistent with arguments that we made both below and in the brief that it necessarily has to be criminal conduct. And the only conduct that happened here in terms of distribution was really the government taking it rather than Mr. Miltier sending it. Yes, Judge Rush. The criminal conduct, isn't it the conduct of which he was convicted? The conduct which he pled guilty was receipt of this material, and then it's relevant that as part of that crime, he made it available to others. He doesn't have to be convicted of distributing it. The guideline doesn't refer to distribution. This is not a case like Dove where it's a completely separate conduct that happened on a different day in a different place. We're talking about exactly what happened, the conduct of the crime, and a relevant part of that is that he made this material available to others. Well, I think that brings into our second point that that conduct has to be knowing on his part or else his conduct is truly limited to receipt or solicitation. So all of his illegal activities, his knowing illegal activities, are already considered as part of the guideline. That's the whole reason that we're under this guideline in the first place. Excuse me. So there is a general presumption in the criminal law in favor of a mens rea and against strict liability. So that's the first proposition for why this should require knowing conduct on his part to take it out of the reduction. Second, the commission made clear in enacting this provision that defendants in this situation who used peer-to-peer software but did not actively send it would generally fall under this reduction and get the reduction. That's because the commission, and it said very clearly in the text of the reasons for Amendment 664, were that it wanted to more normalize the sentences and to draw distinctions between categories of offenders. And so in the commission's view, people who were convicted of what it called simple receipt were closer to defendants who were convicted of simple possession than defendants who were convicted of actual distribution. And the commission enacted this reduction in order to make that happen and to draw those distinctions. And then next, the government's position is inconsistent with this court's holding of Leighton. And Leighton dealt with the distribution enhancement and said that that distribution had to be knowing. And while that's a different provision, our reading of this reduction would treat the word distribution the same throughout the guideline. And it would recognize what this court did recognize in Leighton and what the commission has recognized. I'm sorry to interrupt, but just to clarify, the word distribution is not in B1B. That's correct. But the basis of the district court's decision was that Mr. Miltier engaged in distribution simply by having this software on his computer. And so that's the reason that the court gave for denying that the reduction was a finding that he had engaged in distribution. And so that's why it's relevant. But the more fundamental part of why Leighton is relevant and why the government's argument is really inconsistent with Leighton is that what this court and the commission have both recognized is that the facts matter in these cases and that all of these software programs are different and technology changes over time. And so it's really not proper to apply a blanket rule that the mere presence of this software on someone's computer renders them liable or takes them out of this reduction or in Leighton made the distribution enhancement applicable. And so what district courts have to do is to look at the facts and see what the evidence is about whether the defendant actually did engage in some activity beyond mere receipt. And it's not enough that this program is simply on the computer if there's no evidence that the defendant took some additional steps or engaged in additional activity. And so the reason that the government's argument really doesn't make sense in terms of the overall structure and purpose of the guideline is it renders part C of the reduction completely superfluous. Like I said, the government would apply essentially a per se rule that any time a defendant had a peer-to-peer file sharing software that they could never get the reduction and then that would make C irrelevant because it would mean that the defendant's intent never mattered. And so this court should reject any reading of the guidelines that renders part of it a nullity. But also we can demonstrate that our reading, contrary to what the government has suggested, our reading leaves part C to do some work. So for example, in a case where a defendant is advertising pornography, say that a defendant says, if you send me material, I'll send you some. But if the defendant advertises, I have all this stuff, but doesn't have an actual intent to do it. It's, so to speak, a false advertisement. That would be a situation where even though the defendant lacked the intent to do anything more than receive or solicit the material, that defendant would be disqualified from the reduction because his actions would be more than receipt or solicitation. Another example would be an enticement case. So one of the cases the government cited, which I forget at the moment, is one where the defendant sent nude images of himself to a minor and the court found that that was enticement, even though it was not child sexual material. And so, therefore, it was not actual distribution of that material. It was enticement. And so there, the defendant's conduct was not limited to receipt or solicitation. So that's a situation that, under our reading, all parts of the guideline would actually be doing work and would matter, whereas under the government's reading, the intent prong would never matter and it would collapse the entire structure of the guideline and really go against what the commission intended. To make these kinds of distinctions among types of offenders. And then the one last… The government, in its brief, sort of rejected that analysis by suggesting that the subsection C does some necessary work because without that intent element there, it would necessarily cancel out the ability of the government to apply the comparable two-level enhancement that would otherwise apply in cases like this. Did you recall that portion of the government's brief? It's escaping me at the moment. Perhaps I can deal with it on rebuttal. Okay, fair enough. But I think that in reality, even if there might be occasional circumstances where, under the government's theory, it might apply, in the run-of-the-mill case, which I think this is, the run-of-the-mill case where a defendant has this software but is not doing anything more than receiving, it really would make the intent prong irrelevant. So the last thing I'd like to turn to before yielding my time is the government in its brief… And before you… Yes, I'm sorry. I'm sorry. What I was looking at, the paragraph I was looking at, is at page 14 and 15 of the government's brief. So when you sit down, take a look at that, and then you can respond when you come back. I will, Your Honor. Thank you for that opportunity. The last thing I'll mention in the time I have now is that the government cited a handful of cases from other circuits that have rejected our proposition. And I would urge the court not to treat those as very persuasive for a couple reasons. One, none of them have any real deep analysis. They're pretty bare bones. Second, a lot of those are distinguishable on the facts because those defendants either admitted to knowledge of the capabilities of their peer-to-peer software, or there was some other evidence in the record about things that the defendants had done that really indicated that their actions were somewhat beyond receipt. But then finally, several of those cases, I think the one that probably has the most analysis is Shepard from the Sixth Circuit, where the problem is that those cases predated the amendment that resolved the circuit split that this court took sides in with Layton. And what those courts were saying is that merely having the software equal distribution and that therefore his actions were not limited to mere receipt. His conduct was something beyond mere receipt. And so because those courts applied the definition of distribution that this court rejected and that the commission later rejected, those courts should not be persuasive on this question in a different guideline. Unless the court has more questions now, I'll turn it over to my friend, Ms. Beshara. Thank you very much. Ms. Beshara? Good afternoon, and may it please the court. Jacqueline Beshara for the United States. I'd like to begin with my friend on the other side has introduced what sounds like a new argument about the fact that the recipients of the downloads here were law enforcement officers. He suggests that that should be some kind of salient factor, that that illustrates that this was not conduct attributable to the defendant. I'd like to bring to the court's attention the fact that the Second Circuit in Blow, the Sixth Circuit in Abering, and the Eighth Circuit in Haney all upheld denial of the reduction based on identical fact patterns, where the only evidence of distribution was via a peer-to-peer file sharing program where law enforcement officers were the ones who were downloading from the defendant's computer. Further, the guideline makes no distinction at all as to whom the recipient is of the conduct that exceeds receipt or solicitation, so that really has no bearing. Now, to go into the issue of what was the defendant's relevant conduct, as Judge Rushing flagged, we start with the defendant's offense of conviction. Here, he was convicted of receipt and possession, and so 1B1.3 tells us that we look at the acts and omissions that constitute that offense. Specifically, he used a peer-to-peer file sharing program to download images of child pornography, and as a consequence, a harm that flowed from that act was subsequent distributions of those images. And 1B1.3A3 tells us that that harm that flows from the act constituting his offense of conviction is properly considered as relevant conduct. So, there is no Dove problem in this case. So, next, my colleague – sorry, was there a question? Yeah. Sorry, Mr. Beshear. I do have a question. All right. So, that relevant conduct analysis would apply regardless of the circumstances by which the transmission occurred. So, for example, let's say a defendant didn't receive the pornography via a peer-to-peer network, but instead simply received it locally and then downloaded it to his computer, and then his computer gets hacked. And that hack results in a transmission or distribution of the pornography. That would be the same result? Yes, Your Honor. Our position is that even unknowing or an unintended distribution causes an additional harm to the victims, the children depicted in these images, such that that is conduct that exceeds receipt or solicitation. So, and what triggers all of that is the fact of the initial offense, right? Because generally, the government wouldn't prosecute an individual who, for example, someone hacked into his or her computer and inserted child pornography in the computer without the defendant's knowledge. That's different, right? That's correct. Yeah, go ahead. I apologize for interrupting. Essentially, what this court has said in other contexts involving guidelines that don't require the defendant to have knowledge of some kind of aggravating circumstance in order for an enhancement to apply is that getting to my colleague's discussion of the presumption in favor of Sienter, the concerns animating that presumption are not implicated when it comes to the guidelines because the guidelines only come into play after a defendant has already been convicted of unlawful conduct, right? So, once a defendant undertakes some unlawful course of activity, he assumes the risk of the unintended consequences of that criminal behavior. So, I can turn to a discussion of the commission's intent, if that would be helpful to the court at this point. My colleague, of course, flagged the statement in the 2004 reasons for the amendment. However, the commission's later in time conduct in amending 2G2.2 illustrates that the commission, in fact, did not intend for this reduction provision to carry an additional mental state requirement in prong B. And there's a couple reasons for that. First, the commission specifically amended the general distribution enhancement in 3B7 or 3BF. I apologize, but it did not amend this reduction, as the court is well aware. Further, the commission actually went outside of this particular guideline and it amended two general distribution enhancements into other guideline provisions. Specifically, those were in 2G2.1 and 2G3.1. Those also provide for enhancements based on conduct involving distribution. And there, the commission elected to add a knowledge requirement, but again, it did not impose any knowledge requirement in prong B here. Finally, the commission made those conscious decisions after the Sixth Circuit had reached its decision in Abering and the Tenth Circuit had reached its decision in Wray. The commission specifically mentioned and discussed Wray in its reasons for the 2016 amendment. So we presume that it was aware of that judicial interpretation of this reduction when it elected not to add a knowledge requirement. Next, my colleague brought up this court's decision in Layton, which, as the court well knows, was construing the previous version of the general distribution enhancement. As my colleague recognized, that's a different provision. There is no indication that the commission intended for the enhancement and the reduction to operate as reciprocal provisions. They are structured completely differently such that it is not a case where one statute or one provision is parallel to another and it would make sense to carry over an interpretation. And they also, as the court is aware, reach different forms of conduct. The distribution enhancement covers only distribution, but the reduction reaches beyond that. It covers any conduct that is not limited to receipt or solicitation. And finally, I'll flag that my friend on the other side suggested that by imputing a knowledge requirement into prong B, that would somehow make a consistent reading of all of the distribution provisions in 2G2.2. But that's actually not correct because if we look at the general definition of distribution in the application notes, there is no knowledge requirement there. The commission has left that in place over the course of several amendments. So it would actually be introducing sort of an irregularity by requiring knowledge in prong B and then a lack of intent in prong C. Finally, I'll touch on this perfluity argument. It's important to remember that prongs B and C are serving two different functions here, right? They're taking account of different things. So prong C is assessing the defendant's intent, but prong B is looking at the scope of his conduct and by implication, the amount of harm that he has caused. So yes, the defendant is correct that failure to satisfy all three prongs, if a defendant doesn't meet one of those prongs, that's enough to defeat eligibility for the reduction. But under the defendant's reading, what would happen is that so long as he satisfied either prong B or C, he would be entitled to the reduction. And that just, it's clear, both parties have agreed that all three prongs must be satisfied. And there's no suggestion that the commission intended for prongs B and C to be interchangeable or collapsible in any way. Unless the court has any further questions, we ask that you affirm. Thank you very much. We appreciate your argument. Counsel, do you have any rebuttal? Mr. Bryant. Just a couple of brief points, Your Honor. First, in response to Judge Diaz's question about whether our interpretation renders part of the guidelines purpose, I'll point the court to page four of our reply brief. But I think that what the government, as I understand that argument, is saying is that part C would apply. The reason that part C is in there for the government is that someone who tried but failed to distribute material would be disqualified because they still met the intent prong. The way that I read it, I think that that person would be disqualified even under B, even if C didn't exist. Because under B, that would be conduct that is not limited to receipt. That sort of attempted distribution or even perhaps possession with intent to distribute, even if they don't actually attempt to do it. So I think that's the best answer I could give in the time I have. I do want to very briefly just respond to the cases that the government mentioned. Without really getting into the weeds, I'll just say that the Haney case was a Tenth Circuit case that arose in the 2255 context. So I think it's just so removed because it was an ineffective assistance of counsel argument that it's not really that analogous. The Blau case from, I believe, the Second Circuit took such a very broad reading that anything, including, it basically said that the mere presence of this peer-to-peer software was enough to relate to distribution. And that reading, I think, is so broad that it would apply to mere ownership of a computer. Mere ownership of the material would relate to its distribution by another party. And then the Abring case that the government mentioned, I forget which circuit that was, but in that one, the defendant tried but failed to disable the sharing function of the peer-to-peer software program. So that evinces a knowledge on the part of the defendant about the capabilities of the program and what sharing and downloading and distributing was going on that is not present here. So the last thing, yesterday afternoon the government sent a case to me called Taylor, which I'm afraid that I don't have the site for because I thought the government was going to rely on it. I can find it if you give me a moment. And the court said that it doesn't matter if the defendant knows that the firearm is stolen, but the firearm guideline has an express provision that says it's irrelevant. It applies regardless of whether the defendant knew. And so we think, and this may be why the government didn't mention it in its argument, we think that case actually helps us. That the commission knows how to write a provision that applies strict liability and says that an enhancement or a provision applies regardless of the defendant's knowledge, and it chose not to do so in 2G 2.2. So we think that that is an additional argument in our favor, and I thank the government for bringing it to our attention. And then lastly, I think we'll just rely on our argument about Layton is really about, we recognize that it's not the same guidelines provision, but what this court should do is read the guideline as a whole and treat like concepts alike and not apply a narrow, restricted definition of distribution there, but then apply a definition so broad in this context, it would really defeat what it did in Layton and what the commission did in response to Layton in adopting it. So unless there are any further questions now, we would ask the court to vacate Mr. Miltier's sentence and remand for a re-sentencing hearing. Thank you both for your arguments. We appreciate them. I ask the clerk to adjourn court. Honorable court stands adjourned. Sign a die. God save the United States in this honorable court.
judges: Diana Gribbon Motz, Albert Diaz, Allison J. Rushing